UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DANIEL ROYBAL; VIDA ROYBAL,                No. 2:05-cv-01207-MCE-KJM

      Plaintiffs,

    v.                                         <u>MEMORANDUM AND ORDER</u>

EQUIFAX; TRANS UNION;
EXPERIAN; RICKENBACKER;
MEDAMERICA; CITY TOWING BODY
SHOP, INC.; SEARS; and DOES 1
through 50,

      Defendants.

----oo0oo----

Through the present action, Plaintiffs Daniel and Vida
Roybal ("Plaintiffs") allege that Equifax, Transunion,
Rickenbacker, and City Towing Body Shop, Inc.("City Towing")[1]
violated both state and federal consumer protection laws by
furnishing and reporting erroneous credit information on
Plaintiffs' credit report.

---

[1] Plaintiffs' lawsuit originally included other Defendants
who have since been dismissed either voluntarily or by Court
order following previous motions in this matter.

1

Presently before the Court is Defendant City Towing's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.[2] For the reasons set forth below, that Motion will be granted.[3]

**BACKGROUND**

This lawsuit stems from alleged credit report inaccuracies that Plaintiffs claim they discovered while attempting to refinance their home in 2003.  Because Plaintiffs' credit report included a number of entries incorrectly linked to Plaintiffs by Defendant Rickenbacker, an agency who furnished credit information to national credit reporting agencies (including Defendants Trans Union and Equifax, hereinafter "CRAs"), Plaintiffs allege they attempted to contact Rickenbacker directly in order to resolve the inaccuracies and clear their credit report.

It appears that some of the allegedly inaccurate collection accounts listed on Plaintiffs' credit report were attributable to debts purportedly owed to Defendant City Towing.

///
///
///
///
///

---

[2] Unless otherwise noted, all further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

[3] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs.  E.D. Cal. Local Rule 78-230(h).

1  According to the Declaration of Greg Albee, a loan officer who
2  originally tried to help Plaintiffs secure a new loan,
3  Plaintiffs' credit report included some thirteen alleged
4  collection accounts from City Towing.[4]  Albee Decl., ¶ 2.
5  Plaintiffs' Amended Complaint, however, contains no specific
6  allegations whatsoever directed to City Towing.  In addition,
7  while the Declarations of Plaintiffs Vida Roybal and Daniel
8  Roybal outline steps they claim to have taken to rectify the
9  inaccurate entries with Defendants Equifax and Rickenbacker,
10 there is no evidence that any contacts whatsoever were made with
11 City Towing.

12      Plaintiffs' Amended Complaint, filed on April 24, 2006,
13 asserts claims under the Fair Credit Reporting Act ("FCRA") and
14 the Fair Debt Collection Practices Act ("FDCPA"), along with
15 various state law claims, brought both statutorily and under
16 California common law.  Plaintiffs' Amended Complaint was subject
17 to a Motion to Dismiss brought by Defendant Medamerica under
18 Rule 12(b)(6).  The Court granted that Motion as to Plaintiffs'
19 FDCPA claim on statute of limitations grounds, and further
20 dismissed the FCRA claim against Medamerica, also without leave
21 to amend.
22 ///

23 _____

24      [4] While Plaintiffs' Opposition to this Motion purports to
   include numerous declarations, including that of Mr. Albee, in
25 fact no declarations were filed by Plaintiffs' counsel with
   respect to City Towing's Motion for Summary Judgment.  Because
26 the declarations that were supposed to have been attached were
   filed in the other concurrently pending summary judgment motions,
27 however, including those brought by Defendants Rickenbacker and
   Equifax, the Court has considered those declarations as having
28 also been directly submitted in support of this Motion.

1    Defendant City Towing filed a Motion for Judgment on the
2    Pleadings as to the Amended Complaint on January 25, 2008.
3    Thereafter, on June 4, 2008, while its motion attacking the
4    pleadings still remained under submission, City Towing filed the
5    present Motion for Summary Judgment, which the Court now considers.

6
7                                **STANDARD**
8

9         The Federal Rules of Civil Procedure provide for summary
10   judgment when "the pleadings, depositions, answers to
11   interrogatories, and admissions on file, together with
12   affidavits, if any, show that there is no genuine issue as to any
13   material fact and that the moving party is entitled to a judgment
14   as a matter of law."  Fed. R. Civ. P. 56(c).  One of the
15   principal purposes of Rule 56 is to dispose of factually
16   unsupported claims or defenses.  <u>Celotex Corp. v. Catrett</u>, 477
17   U.S. 317, 325 (1986).

18        Rule 56 also allows a court to grant summary adjudication on
19   part of a claim or defense.  <u>See</u> Fed. R. Civ. P. 56(a) ("A party
20   seeking to recover upon a claim ... may ... move ... for a
21   summary judgment in the party's favor upon all or any part
22   thereof."); <u>see also</u> <u>Allstate Ins. Co. v. Madan</u>, 889 F. Supp.
23   374, 378-79 (C.D. Cal. 1995); <u>France Stone Co., Inc. v. Charter</u>
24   <u>Township of Monroe</u>, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

25        The standard that applies to a motion for summary
26   adjudication is the same as that which applies to a motion for
27   summary judgment.  <u>See</u> Fed. R. Civ. P. 56(a), 56(c); <u>Mora v.</u>
28   <u>ChemTronics</u>, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

                                    4

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. at 323 (quoting Rule 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).

///

///

///

///

1  Stated another way, "before the evidence is left to the jury,
2  there is a preliminary question for the judge, not whether there
3  is literally no evidence, but whether there is any upon which a
4  jury could properly proceed to find a verdict for the party
5  producing it, upon whom the onus of proof is imposed." Anderson,
6  477 U.S. at 251 (quoting Improvement Co. v. Munson, 14 Wall. 442,
7  448, 20 L.Ed. 867 (1872)).  As the Supreme Court explained,
8  "[w]hen the moving party has carried its burden under Rule 56(c),
9  its opponent must do more that simply show that there is some
10 metaphysical doubt as to the material facts .... Where the record
11 taken as a whole could not lead a rational trier of fact to find
12 for the nonmoving party, there is no 'genuine issue for trial.'"
13 Matsushita, 475 U.S. at 586-87.

14     In resolving a summary judgment motion, the evidence of the
15 opposing party is to be believed, and all reasonable inferences
16 that may be drawn from the facts placed before the court must be
17 drawn in favor of the opposing party.  Anderson, 477 U.S. at 255.
18 Nevertheless, inferences are not drawn out of the air, and it is
19 the opposing party's obligation to produce a factual predicate
20 from which the inference may be drawn.  Richards v. Nielsen
21 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),
22 aff'd, 810 F.2d 898 (9th Cir. 1987).
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

6

**ANALYSIS**

**I.   PLAINTIFFS CANNOT STATE ANY CLAIM AGAINST DEFENDANT CITY TOWING BECAUSE CITY TOWING HAD NO ACTIVE ROLE IN THE EVENTS UNDERLYING THIS LITIGATION**

Plaintiffs premise City Towing's liability in this action on the fundamental assertion that City Towing, as a furnisher of credit information, provided false information in that regard concerning Plaintiffs to the CRA Defendants.  As indicated above, some of the allegedly incorrect credit entries appeared to concern debts owed by Plaintiffs to City Towing.

In fact, there is no evidence to buttress this underlying contention, and absent actionable conduct on the part of City Towing itself Plaintiffs' claims necessarily fail.  It is undisputed that City Towing never did any business with Plaintiffs, never engaged in any conduct intended to result in any such business with Plaintiffs, and never entered into any credit transaction with the Plaintiffs.  Undisputed Fact Nos. 10-13.  It is further undisputed that Plaintiffs have never owed any debt to City Towing (Undisputed Fact No. 14), and that City Towing has never attempted to collect any such debt from Plaintiffs.  Undisputed Fact No. 15.

While Plaintiffs purport to dispute the fact that City Towing never retained Defendant Rickenbacker as a collection agency to collect against the Plaintiffs on its behalf (see Undisputed Fact No. 16 and Plaintiffs' response thereto), Plaintiffs offer no evidence whatsoever to support that assertion.

///

7

In contrast, City Towing has produced a declaration from City Towing's owner, Kenneth Carvalho, which states unequivocally that City Towing never retained Rickenbacker to collect any debt from Plaintiffs.  Carvalho Decl., ¶ 4.  In addition, City Towing has further offered a declaration from Defendant Rickenbacker's Compliance Manager, Stacey Angst, which confirms that Rickenbacker was never asked by City Towing to perform any duties in that regard.  Angst Decl., ¶ 5.

With regard to the CRA Defendants, City Towing has also produced declarations from personnel at both Equifax, Trans Union and Experian which further establish that City Towing never furnished any credit information concerning Plaintiffs to those entities, either.  See Decls. of Vicki Banks (Equifax), ¶ 2; Eileen Little (Trans Union), ¶ 3; and Kimberly Hughes (Experian), ¶ 3.

Consequently Plaintiffs have failed to controvert, with any admissible evidence, City Towing's claim that it had no role at all in causing entries concerning Plaintiffs to be placed in their credit report.  Although both Plaintiffs allege by way of declaration that they contacted other Defendants in an attempt to rectify the inaccurate reporting (including Defendants Equifax and Rickenbacker), no allegation of any such contact is made with respect to City Towing.

While Plaintiffs generally assert that the City Towing entries on Plaintiffs' credit report did not "appear out of thin air", the fact remains that they have pointed to no actual evidence linking any conduct by City Towing with those entries.
///

1   Therefore Plaintiffs have failed to rebut City Towing's showing

2   that it bears no responsibility for those entries, and City

3   Towing is entitled to summary judgment as to Plaintiffs' claims

4   stemming from improper credit reporting in their entirety.

5

6   **II.   PLAINTIFFS' STATE-BASED CLAIMS ARE PREEMPTED BY THE FCRA IN**

7   **ANY EVENT**

8          Plaintiffs fare no better if we examine the merits of the

9   specific claims asserted by Plaintiffs against City Towing.

10  First, with respect to Plaintiff's state-based causes of action,

11  those claims are preempted by the FCRA.

12         The FCRA establishes standards for the collection,

13  communication, and use of consumer credit information for

14  business purposes.  Given this statutory framework of uniform

15  requirements applicable to both the gathering and dissemination

16  of such credit information, Congress has included certain

17  preemption provisions within the FCRA in order to prevent state

18  laws from interfering with its objectives.  With regard to

19  regulations affecting the furnishers of credit information, the

20  FCRA provides in pertinent part as follows:

21         "No requirement or prohibition may be imposed under the
           laws of any State-(1) with respect to any subject
22         matter regulated under- ... (F) section 1681s-2 of this
           title, relating to the responsibilities of persons who
23         furnish information to consumer reporting agencies,
           except that this paragraph shall not apply- ... (ii)
24         with respect to section 1785.25(a) of the California
           Civil Code...."

25

26  ///

27  ///

28  ///

1    15 U.S.C. § 1681t(b)(1)(F)(ii).[5]

2         On its face, this preemption provision precludes all state

3    statutory or common law causes of action that would impose any

4    "requirement or prohibition" on those who furnish credit

5    information.[6]  In its October 20, 2005 Order granting Defendant

6    Rickenbacker's Motion to Dismiss, the Court found that this

7    language completely preempted the state claims being asserted by

8    Plaintiffs at that time, which as stated above included both

9    statutory and common law claims.  That conclusion is equally

10   compelling here.

11        Because Plaintiffs' state law claims against City Towing are

12   all based on alleged injuries arising from City Towing's

13   reporting of credit information, the Court's previous finding

14   that all such claims are completely preempted with regard to

15   Rickenbacker (as another credit information furnisher defendant)

16   also applies to City Towing here.

17   ///

18   ///

19   ///

20   _____

21        [5] Section 1681s-2, as cited in this statute, imposes in part
     a duty on regular furnishers of credit information to correct and
22   update the information they provide so that the information is
     "complete and accurate."  15 U.S.C. § 1681s-2(a)(2).

23        [6] While the statute makes an exception for California Civil
     Code § 1785.25(a), Plaintiffs have not alleged a violation of
24   that provision and even had they done so, no private right of
     action exists under § 1785.25(a) in any event.  Instead, the
25   language affording consumers a private right of action is found
     within §§ 1785.25(g) and 1785.31.  Since Congress was very
26   specific in exempting only § 1785.25(a) from preemption, and does
     not include those provisions which do authorize a private right
27   of action, the Court concludes that no provisions authorizing a
     private right of action under the California Civil Code would be
28   available to Plaintiffs here.

1   See, e.g., Jaramillo v. Experian Info. Solutions, Inc., 155 F.

2   Supp. 2d 356, 361-62 (E.D. Pa. 2001) ("it is clear.... that

3   Congress wanted to eliminate all state causes of action relating

4   to the responsibilities of persons who furnish [credit]

5   information"); Hasvold v. First USA Bank, 194 F. Supp. 2d 1228,

6   1239 (D. Wyo. 2002) ("federal law under the FCRA preempts

7   plaintiff's claims [for defamation and invasion of privacy]

8   against the defendant relating to it as a furnisher of

9   information"); Riley v. Gen. Motors Acceptance Corp., 226 F.

10  Supp. 2d 1316, 1322 (S.D. Ala. 2002) (finding preemption of state

11  claims for negligence, defamation, invasion of privacy and

12  outrage).

13

14  **III.  PLAINTIFFS CANNOT ASSERT A VIABLE CLAIM UNDER THE FCRA**

15

16       Having determined that Plaintiffs' state-based claims

17  against City Towing are completely preempted by the FCRA, we now

18  turn to whether Plaintiffs are left with a viable FCRA claim that

19  precludes entry of summary judgment in City Towing's favor.

20       In Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057,

21  1060 (9th Cir. 2002), the Ninth Circuit found that Congress did

22  not want furnishers of credit information companies exposed to

23  suit by every dissatisfied individual contesting the veracity of

24  credit information so furnished.  The Nelson court went on to

25  recognize, however, that the FCRA does provide a means for

26  allowing such suits provided that certain procedural

27  prerequisites were satisfied:

28  ///

"[C]ongress did provide a filtering mechanism... by
making the disputatious consumer notify a CRA and
setting up the CRA to receive notice of the
investigation by the furnisher.  With this filter in
place and opportunity for the furnisher to save itself
from liability by taking the steps required by § 1681s-
2(b), Congress put no limit on private enforcement
under §§ 1681n & o."

<u>Id</u>.

The foregoing makes it clear that a private right of action
against a furnisher of credit information exists only if the
consumer has notified a CRA in the first instance.  Under the
FCRA, the CRAs then have an obligation to investigate whether the
claim is frivolous or irrelevant.  <u>See</u> 15 U.S.C. § 1681i(a)(3).
Once a claim is deemed viable, the CRAs must contact the
furnisher of the credit information who is then afforded the
opportunity to investigate and rectify erroneous reporting
entries.  <u>See</u> 15 U.S.C. § 1681s-2(b).  The furnisher's duty to
investigate, however, does not arise unless and until it receives
notice of the credit reporting dispute directly from the CRAs.
Bypassing the CRAs, as the filtering entities, and contacting the
credit information furnishers directly does not actuate the
furnishers obligation to investigate under the FCRA, and does not
give rise to a private right of action against the furnishers on
behalf of an allegedly aggrieved consumer.  <u>See</u> <u>Nelson</u>, 282 F.3d
at 1060.

///

///

///

///

///

1    Applying these prerequisites for liability to the present

2    case, in order for Plaintiffs to state a claim under the FCRA

3    against a purported furnisher of credit information like

4    Defendant City Towing, Plaintiffs must show that they contacted

5    the CRAs and that the CRAs, in turn, determined the claim was

6    viable and contacted City Towing, thereby triggering City

7    Towing's duty to investigate.  In the absence of such showing,

8    Plaintiffs lack standing under the FCRA to pursue a private right

9    of action against City Towing.

10   While Plaintiffs claim they contacted Defendant Rickenbacker

11   directly, and also assert that they at least contacted the CRA

12   Defendant Equifax by telephone, there is absolutely no evidence

13   that the CRAs notified City Towing itself of the purported

14   inaccuracies so as to trigger City Towing's duty to investigate

15   under the FCRA and the corresponding right on Plaintiffs' behalf

16   to bring an action against City Towing alleging that any

17   investigation and/or action subsequently taken was inadequate.

18   Without that showing, Defendant City Towing is entitled to

19   summary judgment under the terms of the FCRA.[7]

20   ///

21   ///

22   ///

23   ///

24

25          [7] While Plaintiffs appear to argue that their state common
     law causes of action are not preempted because 15 U.S.C.
26   § 1681h(e) exempts "false information furnished with malice or
     willful intent to injure" from the scope of FCRA's preemption, in
27   the absence of any showing of City Towing's involvement in the
     credit reporting at issue in the first place, such involvement by
28   definition could not have been willful or malicious.

                                   13

**IV.  PLAINTIFFS' FDCPA CLAIMS ARE TIME-BARRED**

Plaintiffs' claims that City Towing violated the FCDPA by using false and misleading statement to collect a debt, in violation of 15 U.S.C. §§ 1692e and 1692f, is equally unavailing even if the Court were to overcome the fundamental issue of City Towing's lack of involvement, which it has not.

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to protect consumers against debt collection issues.  15 U.S.C. § 1692(e).  Under both the FDCPA and its California counterpart, the so-called Rosenthal FDCPA, the applicable limitations period is one year.  See 15 U.S.C. § 1692k(d) (federal); Cal. Civ. Code § 1788.30(f) (state).

Here, Plaintiffs allege that Defendants violated the FDCPA by "report[ing] false and derogatory information."  Pls.' Amended Compl., ¶ 69.  The same allegation is made with respect to Plaintiff's allegations under the state-based Rosenthal FDCPA.  Id. at ¶ 75.  It is undisputed that the alleged credit reporting occurred in 1997 and 2001 (Undisputed Fact No. 5), and was discovered by Plaintiffs on or about December 13, 2003.  Undisputed Fact No. 4.

///
///
///
///

14

1    The present action was commenced on May 10, 2005, well
2  beyond the one-year statute of limitations irrespective of how
3  that date is calculated.  Assuming, for example, that the statute
4  began to run from the date the allegedly improper credit reports
5  were made, the statute would have run in either 1998 or 2002,
6  well before Plaintiffs' lawsuit was filed in 2005.  Conversely,
7  even if the statute did not start until after Plaintiffs admit
8  they discovered the inaccuracies in question on December 13,
9  2003, Plaintiff's lawsuit was still not filed within the
10 requisite one-year period.  Plaintiffs' FDCPA claims are
11 accordingly time-barred.

12

13                          **CONCLUSION**

14

15   For the reasons set forth above, Defendant City Towing's
16 Motion for Summary Judgment is GRANTED.[8]  The Court recognizes
17 that Plaintiffs have requested in the body of their Opposition
18 that a continuance be granted should the Court be inclined to
19 grant Rickenbacker's Motion for Summary Judgment.  (Pls.' Opp.,
20 18:15-17).  The stated grounds for that continuance, despite the
21 fact that the discovery deadline has long since passed, is to
22 allow "further follow up in discovery," with no further detail of
23 any kind being provided.  Plaintiffs have failed to identify just
24 what discovery might be undertaken that would lead to information
25 suggesting a different result.

26

27        [8] Because this Motion supplants City Towing's earlier-filed
28 Motion for Judgment on the Pleadings, that Motion is denied as
   moot.

                                15

1  No declaration supporting the need for such discovery was

2  submitted in advance of the hearing on this Motion, as required

3  by Federal Rule of Civil Procedure 56(f).  Plaintiffs have failed

4  to outline, as they must, the steps or procedures necessary to

5  obtain needed discovery, why the discovery was not obtained

6  beforehand, or how any facts obtained through additional

7  discovery would defeat Defendant City Towing's Motion.  See Tatum

8  v. City & County of San Francisco, 441 F.3d 1090, 1101 (9th Cir.

9  2006).  Consequently Plaintiffs' continuance request is DENIED.

10      IT IS SO ORDERED.

11  Dated: October 7, 2008

12

13

14  MORRISON C. ENGLAND, JR.
    UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16