1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10

11   DANIEL ROYBAL; VIDA ROYBAL,        No. 2:05-CV-01207-MCE-KJM

12          Plaintiffs,

13      v.                              MEMORANDUM AND ORDER

14   EQUIFAX; TRANS UNION;
     EXPERIAN; RICKENBACKER;
15   MEDAMERICA; CITY TOWING BODY
     SHOP, INC.; SEARS; and DOES 1
16   through 50,

17          Defendants.

18

19                        ----oo0oo----

20      Through the present action, Plaintiffs Daniel and Vida

21   Roybal ("Plaintiffs") allege that Equifax, Transunion,

22   Rickenbacker, and City Towing Body Shop, Inc.[1] violated both

23   state and federal consumer protection laws by furnishing and

24   reporting erroneous credit information on Plaintiffs' credit

25   report.

26   _____

27      [1] Plaintiffs' lawsuit originally included other Defendants
     who have since been dismissed either voluntarily or by Court
28   order following previous motions in this matter.

                                  1

1 | Presently before the Court is Defendant Rickenbacker's Motion for
2 | Summary Judgment pursuant to Federal Rule of Civil Procedure 56.
3 | For the reasons set forth below, that Motion will be granted.[2]

4 |

5 | **BACKGROUND**

6 |

7 | This lawsuit stems from alleged credit report inaccuracies
8 | that Plaintiffs claim they discovered while attempting to
9 | refinance their home in 2003.  Because Plaintiffs' credit report
10 | included a number of entries incorrectly linked to Plaintiffs by
11 | Defendant Rickenbacker, an agency who furnished credit
12 | information to national credit reporting agencies (including
13 | Defendants Trans Union and Equifax, hereinafter "CRAs"),
14 | Plaintiffs allege they attempted to contact Rickenbacker directly
15 | in order to resolve the inaccuracies and clear their credit
16 | report.  Plaintiffs contend that Rickenbacker promised to
17 | eliminate all false credit entries attributed to Plaintiffs but
18 | failed to do so.
19 | Plaintiffs' original complaint, instituted in June of 2005,
20 | asserted claims against Rickenbacker under the Fair Credit
21 | Reporting Act ("FCRA"), the Fair Credit Billing Act ("FCBA"), the
22 | Fair Debt Collection Practices Act ("FDCPA"), and California
23 | state law.  In October of 2005, this Court dismissed Plaintiffs'
24 | claims against Rickenbacker.
25 | ///

26 |

27 | [2] Because oral argument will not be of material assistance,
the Court orders this matter submitted on the briefs.  E.D. Cal.
28 | Local Rule 78-230(h).

2

1 The Order granted leave to amend as to the FCRA and FCBA claims,

2 but not as to the FDCPA claims or the state law claims, which

3 included statutory violations as well as causes of action for

4 negligent misrepresentation and common law negligence.

5 Plaintiffs ultimately filed an Amended Complaint which

6 contained a single cause of action, for breach of oral contract,

7 based on Rickenbacker's alleged failure to remove the false

8 credit entries from Plaintiffs' credit report as indicated above.

9 Although Defendant Rickenbacker initially brought a Motion to

10 Dismiss as to the Amended Complaint on various procedural

11 grounds, that Motion was denied by Memorandum and Order filed

12 March 4, 2008.

13 The present Motion for Summary Judgment now challenges

14 Plaintiffs' Amended Complaint on a substantive basis.  Defendant

15 Rickenbacker claims that Plaintiffs' claim for breach of contract,

16 a cause of action premised on the provisions of state law, is

17 entirely preempted by the FCRA.  Alternatively, Rickenbacker

18 alleges that under California law an oral contract was not formed

19 in any event due to the lack of any requisite consideration.

20

21 **STANDARD**

22

23 The Federal Rules of Civil Procedure provide for summary

24 judgment when "the pleadings, depositions, answers to

25 interrogatories, and admissions on file, together with

26 affidavits, if any, show that there is no genuine issue as to any

27 material fact and that the moving party is entitled to a judgment

28 as a matter of law."  Fed. R. Civ. P. 56(c).

1 | One of the principal purposes of Rule 56 is to dispose of

2 | factually unsupported claims or defenses.  <u>Celotex Corp. v.</u>

3 | <u>Catrett</u>, 477 U.S. 317, 325 (1986).

4 |  Rule 56 also allows a court to grant summary adjudication on

5 | part of a claim or defense.  <u>See</u> Fed. R. Civ. P. 56(a) ("A party

6 | seeking to recover upon a claim ... may ... move ... for a

7 | summary judgment in the party's favor upon all or any part

8 | thereof."); <u>see also</u> <u>Allstate Ins. Co. v. Madan</u>, 889 F. Supp.

9 | 374, 378-79 (C.D. Cal. 1995); <u>France Stone Co., Inc. v. Charter</u>

10 | <u>Township of Monroe</u>, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

11 |  The standard that applies to a motion for summary

12 | adjudication is the same as that which applies to a motion for

13 | summary judgment.  <u>See</u> Fed. R. Civ. P. 56(a), 56(c); <u>Mora v.</u>

14 | <u>ChemTronics</u>, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of
> informing the district court of the basis for its
> motion, and identifying those portions of 'the
> pleadings, depositions, answers to
> interrogatories, and admissions on file together
> with the affidavits, if any,' which it believes
> demonstrate the absence of a genuine issue of
> material fact.

20 | <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323(quoting Rule 56(c)).

21 |  If the moving party meets its initial responsibility, the

22 | burden then shifts to the opposing party to establish that a

23 | genuine issue as to any material fact actually does exist.

24 | <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,

25 | 585-87 (1986); <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S.

26 | 253, 288-89 (1968).

27 | ///

28 | ///

4

1  In attempting to establish the existence of this factual

2  dispute, the opposing party must tender evidence of specific

3  facts in the form of affidavits, and/or admissible discovery

4  material, in support of its contention that the dispute exists.

5  Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that

6  the fact in contention is material, i.e., a fact that might

7  affect the outcome of the suit under the governing law, and that

8  the dispute is genuine, i.e., the evidence is such that a

9  reasonable jury could return a verdict for the nonmoving party.

10  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52

11  (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper

12  Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way,

13  "before the evidence is left to the jury, there is a preliminary

14  question for the judge, not whether there is literally no

15  evidence, but whether there is any upon which a jury could

16  properly proceed to find a verdict for the party producing it,

17  upon whom the onus of proof is imposed."  Anderson, 477 U.S. at

18  251 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448, 20

19  L.Ed. 867 (1872)).  As the Supreme Court explained, "[w]hen the

20  moving party has carried its burden under Rule 56(c), its

21  opponent must do more than simply show that there is some

22  metaphysical doubt as to the material facts .... Where the record

23  taken as a whole could not lead a rational trier of fact to find

24  for the nonmoving party, there is no 'genuine issue for trial.'"

25  Matsushita, 475 U.S. at 586-87.

26  ///

27  ///

28  ///

1    In resolving a summary judgment motion, the evidence of the

2   opposing party is to be believed, and all reasonable inferences

3   that may be drawn from the facts placed before the court must be

4   drawn in favor of the opposing party.  <u>Anderson</u>, 477 U.S. at 255.

5   Nevertheless, inferences are not drawn out of the air, and it is

6   the opposing party's obligation to produce a factual predicate

7   from which the inference may be drawn.  <u>Richards v. Nielsen</u>

8   <u>Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

9   <u>aff'd</u>, 810 F.2d 898 (9th Cir. 1987).

10

11                            **ANALYSIS**

12

13    As already indicated in the Court's previous Memorandum and

14   Order in this case filed October 20, 2005, the FCRA establishes

15   standards for the collection, communication, and use of consumer

16   credit information for business purposes.  Given this statutory

17   framework of uniform requirements applicable to both the

18   gathering and dissemination of such credit information, Congress

19   has included certain preemption provisions within the FCRA in

20   order to prevent state laws from interfering with its objectives.

21   With regard to regulations affecting the furnishers of credit

22   information, the FCRA provides in pertinent part as follows:

23        "No requirement or prohibition may be imposed under the
          laws of any State- (1) with respect to any subject

24        matter regulated under- ... (F) section 1681s-2 of this
          title, relating to the responsibilities of persons who

25        furnish information to consumer reporting agencies,
          except that this paragraph shall not apply- ... (ii)

26        with respect to section 1785.25(a) of the California
          Civil Code...."

27

28   ///

6

1 15 U.S.C. § 1681t(b)(1)(F)(ii).[3]

2    On its face, this preemption provision precludes all state

3 statutory or common law causes of action that would impose any

4 "requirement or prohibition" on those who furnish credit

5 information.[4]  In its October 20, 2005 Order, the Court found

6 that this language completely preempted the state claims being

7 asserted by Plaintiffs at that time, which as stated above

8 included both statutory claims and common law causes of action

9 founded upon negligence.

10    Plaintiffs, in their Amended Complaint, have changed the

11 underlying state common law claims to assert a cause of action

12 for breach of contract as opposed to the previously pled claims

13 sounding in negligence.  Because both theories of recovery are

14 based on injuries arising from the reporting of credit

15 information by a furnisher of such information, Plaintiffs'

16 breach of contract claim is preempted just as their negligence

17 claims were earlier found to be precluded.

18 ////

19 ///

20

21    [3] Section 1681s-2, as cited in this statute, imposes in part
a duty on regular furnishers of credit information to correct and
update the information they provide so that the information is
22 "complete and accurate."  15 U.S.C. § 1681s-2(a)(2).

23    [4] While the statute makes an exception for California Civil
Code § 1785.25(a), Plaintiffs have not alleged a violation of
24 that provision and even had they do so, no private right of
action exists under § 1785.25(a) in any event.  Instead, the
25 language affording consumers a private right of action is found
within §§ 1785.25(g) and 1785.31.  Since Congress was very
26 specific in exempting only § 1785.25(a) from preemption, and does
not include those provisions which do authorize a private right
27 of action, the Court concludes that no provisions authorizing a
private right of action under the California Civil Code would be
28 available to Plaintiffs here.

7

1   See, e.g., Jaramillo v. Experian Info. Solutions, Inc., 155 F.

2   Supp. 2d 356, 361-62 (E.D. Pa. 2001) ("it is clear.... that

3   Congress wanted to eliminate all state causes of action relating

4   to the responsibilities of persons who furnish [credit]

5   information"); Hasvold v. First USA Bank, 194 F. Supp. 2d 1228,

6   1239 (D. Wyo. 2002) ("federal law under the FCRA preempts

7   plaintiff's claims [for defamation and invasion of privacy]

8   against the defendant relating to it as a furnisher of

9   information"); Riley v. Gen. Motors Acceptance Corp., 226 F.

10  Supp. 2d 1316, 1322 (S.D. Ala. 2002) (finding preemption of state

11  claims for negligence, defamation, invasion of privacy and

12  outrage).

13       Here, Plaintiffs' breach of oral contract claim against

14  Rickenbacker unquestionably stems from Rickenbacker's alleged

15  role in reporting erroneous credit information to the national

16  CRAs, including Defendants Equifax and Trans Union.  This means

17  that Plaintiff's breach of contract claim against Rickenbacker is

18  preempted in its entirety by the FCRA.  Having made that

19  determination, we now turn to whether Plaintiffs are left with a

20  viable FCRA claim that precludes entry of summary judgment in

21  Rickenbacker's favor.

22       In Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057,

23  1060 (9th Cir. 2002), the Ninth Circuit found that Congress did

24  not want credit information companies like Rickenbacker exposed

25  to suit by every dissatisfied individual contesting the veracity

26  of credit information so furnished.

27  ///

28  ///

8

1 The <u>Nelson</u> court went on to recognize, however, that the FCRA

2 does provide a means for allowing such suits provided that

3 certain procedural prerequisites were satisifed:

4     "[C]ongress did provide a filtering mechanism... by
    making the disputatious consumer notify a CRA and

5     setting up the CRA to receive notice of the
    investigation by the furnisher.  With this filter in

6     place and opportunity for the furnisher to save itself
    from liability by taking the steps required by § 1681s-

7     2(b), Congress put no limit on private enforcement
    under §§ 1681n & o."

8

9 <u>Id</u>.

10     The foregoing makes it clear that a private right of action

11 against a furnisher of credit information exists only if the

12 consumer has notified a CRA in the first instance.  Under the

13 FCRA, the CRAs then have an obligation to investigate whether the

14 claim is frivolous or irrelevant.  <u>See</u> 15 U.S.C. § 1681i(a)(3).

15 Once a claim is deemed viable, the CRAs must contact the

16 furnisher of the credit information who is then afforded the

17 opportunity to investigate and rectify erroneous reporting

18 entries.  <u>See</u> 15 U.S.C. § 1681s-2(b).  The furnisher's duty to

19 investigate, however, does not arise unless and until it receives

20 notice of the credit reporting dispute directly from the CRAs.

21 Bypassing the CRAs, as the filtering entities, and contacting the

22 credit information furnishers directly does not actuate the

23 furnishers obligation to investigate under the FCRA, and does not

24 give rise to a private right of action against the furnishers on

25 behalf of an allegedly aggrieved consumer.  <u>See</u> <u>Nelson</u>, 282 F.3d

26 at 1060.

27 ///

28 ///

1      Applying these prerequisites for liability to the present

2   case, in order for Plaintiffs to state a claim under the FCRA

3   against a furnisher of credit information like Defendant

4   Rickenbacker, Plaintiffs must show that they contacted the CRAs

5   and that the CRAs, in turn, determined the claim was viable and

6   contacted Rickenbacker, thereby triggering Rickenbacker's duty to

7   investigate.[5]  In the absence of such showing, Plaintiffs lack

8   standing under the FCRA to pursue a private right of action

9   against Rickenbacker.

10     While Plaintiffs claim they contacted Rickenbacker directly,

11  and also assert that they at least contacted the CRA Defendants

12  by telephone, there is absolutely no evidence that the CRAs

13  notified Rickenbacker directly of the purported inaccuracies so

14  as to trigger Rickenbacker's duty to investigate under the FCRA

15  and the corresponding right on Plaintiffs' behalf to bring an

16  action against Rickenbacker alleging that any investigation

17  and/or action subsequently taken was inadequate.[6]  Without that

18  showing, Defendant Rickenbacker is entitled to summary judgment

19  under the terms of the FCRA.

20  ///

21  ///

22  ///

23

24      [5] Even Plaintiffs concede, at 3:18-19 of their Opposition to
    this Motion, that a credit information dispute taken directly to
    Rickenbacker "is generally ineffective under the FCRA."

25

26      [6] Although Plaintiffs claim that they contacted Defendant
    Equifax who told them that they should contact the collection
    agency, Rickenbacker in order to remove the disputed credit items
27  (see Decls. of Daniel Roybal and Vida Roybal, ¶16, 24), that
    advice, even if faulty, does not bear upon Rickenbacker's
28  liability under the FCRA.

10

1  Because Rickenbacker is entitled to summary judgment on the

2  preemption issue standing alone, it is not necessary for the

3  Court to address Rickenbacker's alternative argument that the

4  breach of contract claim fails for lack of consideration, and the

5  Court declines to do so.

6

7                              **CONCLUSION**

8

9      For the reasons set forth above, Defendant Rickenbacker's

10  Motion for Summary Judgment is GRANTED.  The Court recognizes

11  that Plaintiffs have requested in the body of their Opposition

12  that a continuance be granted should the Court be inclined to

13  grant Rickenbacker's Motion for Summary Judgment.  (Pls.' Opp.,

14  14:16-18).  The stated grounds for that continuance, despite the

15  fact that the discovery deadline has long since passed, is to

16  allow "further follow up in discovery," with no further detail of

17  any kind being provided.  Plaintiffs have failed to identify just

18  what discovery might be undertaken that would lead to information

19  suggesting a different result.  No declaration supporting the

20  need for such discovery was submitted in advance of the hearing

21  on this Motion, as required by Federal Rule of Civil Procedure

22  56(f).  Plaintiffs have failed to outline, as they must, the

23  steps or procedures necessary to obtain needed discovery, why the

24  discovery was not obtained beforehand, or how any facts obtained

25  through additional discovery would defeat Defendant

26  Rickenbacker's Motion.

27  ///

28  ///

11

1  See Tatum v. City & County of San Francisco, 441 F.3d 1090, 1101

2  (9th Cir. 2006).  Consequently Plaintiffs' continuance request is

3  DENIED.

4       IT IS SO ORDERED.

5  Dated: October 7, 2008

6

7  _____

8  MORRISON C. ENGLAND, JR.
   UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12