UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DANIEL ROYBAL; VIDA ROYBAL,

Plaintiffs,

v.

EQUIFAX; TRANS UNION; EXPERIAN; RICKENBACKER; MEDAMERICA; CITY TOWING BODY SHOP, INC.; SEARS; and DOES 1 through 50,

Defendants.

Case No. 2:05-cv-01207-MCE-KJM

**MEMORANDUM AND ORDER**

----oo0oo----

///

///

///

///

///

///

///

///

///

///

PDF created with pdfFactory trial version www.pdffactory.com

Through the present action Daniel and Vida Roybal ("Plaintiffs") allege that Equifax Information Services ("Equifax") and Trans Union (collectively "Defendants") violated both state and federal consumer protection laws[1] by reporting erroneous credit information on Mr. Roybal's credit report.[2]

///

///

///

///

///

///

[1] The state claims that are the subject of this motion are Unfair Business Practices, Cal. Bus. and Prof. Code §§ 17200 et seq. (first cause of action); Consumer Legal Remedies Act, Cal. Civil Code § 1750 et seq. (second cause of action); Negligent Misrepresentation (third cause of action); Negligence (fourth cause of action); Negligent and/or Intentional Interference with Contractual Relations/Tortious Interference with Prosective Economic Advantage (fifth cause of action); Intentional Infliction of Emotional Distress (tenth cause of action); Negligent Infliction of Emotional Distress (eleventh cause of action); Negligence Per Se (twelfth cause of action); Defamation (thirteenth cause of action); and Invasion of Privacy - False Light (fourteenth cause of action) (collectively "State Claims").

The federal claim that is the subject of this Motion is Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (seventh cause of action) ("Federal Claim").

Plaintiffs' First Amended Complaint ("FAC") also alleges causes of action for violations of the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. (eighth cause of action), and the State FDCPA, Cal. Civ. Code § 1788.17 (ninth cause of action). These causes of action were dismissed with prejudice on April 6, 2006. See Order, 7:22-23 (April 4, 2006).

[2] The Court is aware that the parties dispute whether Plaintiffs' credit reports are "joint" or "individual." Because this characterization does not affect the outcome of the Court's decision, for purposes of this Motion the Court assumes, *arguendo*, that the information was reported only on Mr. Roybal's individual credit report.

PDF created with pdfFactory trial version www.pdffactory.com

Pursuant to Federal Rule of Civil Procedure 56, Defendants, Equifax and Trans Union, move for summary judgment, or in the alternative for summary adjudication, as to each of Plaintiffs' claims.[3] For the reasons set forth below, Defendants' Motions are granted in part and denied in part.[4]

## BACKGROUND

Defendants are national credit reporting agencies that collect information from subscribers regarding consumer accounts, which they compile into credit reports. Defendants also provide those consumer credit reports to subscribers who use that information to make credit related decisions.

In December of 2003, Plaintiffs attempted to refinance their mortgage through Aegis Lending. The lender pulled Plaintiffs' credit histories and, for the first time, Plaintiffs became aware that approximately 100 inaccurate, derogatory entries were being reported on Mr. Roybal's credit report by Rickenbacker Industries ("Rickenbacker"), a collection agency. Id., ¶ 11.

---

[3] Defendants moved to strike Plaintiffs' various Oppositions and evidence. Because the Court did not rely on the disputed papers or evidence in reaching its decision, Defendants' Motions are denied as moot.

Similarly, Plaintiffs moved to strike Defendants' papers on the grounds that they are misleading and portray disputed facts as undisputed. For the same reasons, Plaintiffs request that Defendants be sanctioned. This Court is quite capable of discerning which facts are disputed and which are undisputed. Plaintiffs' Motion and request for sanctions are denied.

[4] Because it is determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefing. E.D. Cal. Local Rule 78-230(h).

PDF created with pdfFactory trial version www.pdffactory.com

No Rickenbacker entries ever appeared in Mrs. Roybal's credit file. Little Decl., ¶ 16; Banks Decl., ¶ 19.

It is undisputed that all but one of those entries were inaccurate or that both Defendants were reporting at least a portion of the inaccurate entries at that time. It is also undisputed that Plaintiffs each had additional accurate derogatory items in their credit files.

In her deposition, Mrs. Roybal claims she contacted Defendants in January of 2004 to dispute the inaccuracies appearing in Mr. Roybal's file. Deposition of Vida Roybal ("Roybal Depo."), 30:5-9; 31:11-12. It is undisputed that Mr. Roybal did not personally telephone Defendants, write any letters to Defendants, or contact Defendants via the internet. Id., 30:10-22. However, Mrs. Roybal claims that, though she initiated the alleged telephone calls, she did so in Mr. Roybal's presence, and she passed the phone to Mr. Roybal as necessary so that he could give verbal authorization to the third parties to speak to her regarding his file. Id., 30:4-6.

Mrs. Roybal additionally alleges that both Defendants told her that they "only report what is given to [them] and, since [it was] that many entries, [she] needed to contact the collection bureau that ha[d] it listed." Id., 33:2-5. Defendants also allegedly told Mrs. Roybal that she could not dispute the items in Mr. Roybal's credit file. Id., 33:8-11.

///

///

///

///

PDF created with pdfFactory trial version www.pdffactory.com

It is undisputed that Plaintiffs followed Defendants instructions and contacted Rickenbacker to attempt to clear the inaccuracies. Additionally, in order to facilitate the process, Plaintiffs took a day off of work and drove to Rickenbacker's Gilroy office to dispute the erroneous entries personally.

According to Mrs. Roybal, in mid-2004, because the inaccuracies were still being reported, and because she and Mr. Roybal were once more attempting to obtain credit, she again called Defendants to have the disputed items removed from Mr. Roybal's credit history. Id., 83:5-22. In response, Defendants allegedly reiterated that Mrs. Roybal needed to contact Rickenbacker. Id., 83:23-84:3.

Defendants have no records of these phone calls. See Trans Union's Motion, 4:16-17.

Shortly thereafter, in August of 2004, Plaintiffs attempted to refinance with Anchor Financial. Roybal Depo., 83:8-84 17. It is undisputed that the Rickenbacker items were still showing on Mr. Roybal's credit report at that time or that Anchor Financial refused to extend credit to Plaintiffs.

Plaintiffs subsequently engaged counsel and their counsel claims to have sent a letter to Defendants on March 21, 2005, requesting immediate action rectifying the erroneous entries. Deposition of Nathaniel Portratz ("Portratz Depo."), 10:4-13; Declaration of Donald E. Bradley ("Bradley Decl."), ¶ 3, Exh. B.

///

///

///

///

PDF created with pdfFactory trial version www.pdffactory.com

Plaintiffs' counsel also claims to have received a response from Trans Union dated April 6, 2005 requesting additional information. Portratz Depo., 6:23-7:4; Bradley Decl., ¶ 6, Exh. E. Plaintiffs' counsel alleges that he responded to the April 6 letter via fax. Portratz Depo., 15:13-16; Little Decl., ¶ 19.

Trans Union disputes the existence and circumstances of these communications. Equifax admits that it received the March 21 letter, but has no record of any subsequent communications. Banks Decl., ¶ 20-21.

Plaintiffs filed this action on May 10, 2005. Little Decl., ¶ 13. By June 1, 2005, Trans Union had deleted the Rickenbacker accounts from Mr. Roybal's file. Id., ¶ 15, Exh. E. By February 13, 2006, Equifax deleted all but one of the Rickenbacker accounts, and it removed the final account in November of 2006. Banks Decl., ¶ 22.

Due to the inaccurate items reported on Mr. Roybal's credit report and to Defendants' alleged failure to timely remove those items, Mrs. Roybal claims to have suffered from, inter alia, a tremendous amount of stress, which led to heavy menstrual periods extending from 15 to 30 days. Roybal Decl., 67:1-17. Furthermore, she claims that the medication she took to rectify her menstrual issues caused severe migraine headaches. Id. 67:11-15. Additionally, it is undisputed that Mr. Roybal entered a program for alcoholics, U-Turn for Christ, at approximately the same time or that Plaintiffs were denied credit during the period in question.

///

///

PDF created with pdfFactory trial version www.pdffactory.com

Presently before the Court are Defendants' Motions for Summary Judgment, or in the alternative, Summary Adjudication with regards to each of Plaintiffs' claims. Also before the Court are Defendants' Motions to Strike Plaintiffs' Oppositions and supporting evidence and both Plaintiffs' Motion to Strike Defendants' Opposition and request for sanctions. Defendants' Motions for Summary Judgment are granted in part and denied in part. The remaining Motions and request for sanctions are denied.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense. See Fed. R. Civ. P. 56(a) ("A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

///

///

PDF created with pdfFactory trial version www.pdffactory.com

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. at 323(quoting Rule 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).

///

PDF created with pdfFactory trial version www.pdffactory.com

Stated another way, “before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.” Anderson, 477 U.S. at 251 (quoting Schuylkill and Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)). As the Supreme Court explained, “[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no ‘genuine issue for trial.’” Matsushita, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party’s obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff’d, 810 F.2d 898 (9th Cir. 1987).

///

///

///

///

///

///

PDF created with pdfFactory trial version www.pdffactory.com

**ANALYSIS**

**I. DEFENDANTS' MOTIONS FOR SUMMARY ADJUDICATION AS TO PLAINTIFFS' SEVENTH CAUSE OF ACTION ALLEGING VIOLATIONS OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681 ET SEQ., IS DENIED**

"The FCRA was the product of congressional concern over abuses in the credit reporting industry. The legislative history of the Fair Credit Reporting Act ("FCRA") reveals that it was crafted to protect consumers from the transmission of inaccurate information about them and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner. These consumer oriented objectives support a liberal construction of the FCRA." Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995) (internal citations omitted).

**A. Elements of Plaintiffs' FCRA Cause of Action**

Plaintiffs allege that Defendants violated 15 U.S.C. § 1681i(a) by failing to "reinvestigate." That section states in pertinent part:

> Subject to subsection (f) of this section, if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A).

PDF created with pdfFactory trial version www.pdffactory.com

Therefore, the elements of Plaintiffs' FCRA cause of action have been articulated as follows:

> 1. The plaintiff's credit file contains inaccurate or incomplete information.
> 2. The plaintiff notified the credit reporting agency directly of the inaccurate or incomplete information.
> 3. The plaintiff's dispute is not frivolous or irrelevant.
> 4. The credit reporting agency failed to respond to the plaintiff's dispute.
> 5. The failure to reinvestigate caused the consumer to suffer damages.
> 6. Actual damages resulted to the plaintiff. Actual damages may include damages for humiliation, mental distress, and injury to reputation and creditworthiness, even if the plaintiff has suffered no out-of-pocket losses.

Thomas v. Trans Union, LLC., 197 F. Supp. 2d 1233, 1236 (D. Or. 2002) (internal citations omitted).

The first issue disputed between the parties is whether, as a threshold matter, Mrs. Roybal has standing to challenge inaccuracies appearing in Mr. Roybal's credit file. Additionally, the parties dispute substantively whether Plaintiffs provided the proper notice of disputed items to Defendants, whether Defendants responded reasonably to Plaintiffs' alleged notice, and whether Plaintiffs' suffered the requisite damages.

**B. Mrs. Roybal Has Standing to Bring FCRA Claims Based on Information That Appears in Mr. Roybal's Credit Report.**

The parties do not dispute that inaccurate information was reported in Mr. Roybal's credit report. However, Plaintiffs have not shown that any inaccurate information was reported on Mrs. Roybal's report.

///

PDF created with pdfFactory trial version www.pdffactory.com

Because no such information was reported as to Mrs. Roybal, Defendants argue that she lacks standing to bring the current claims.

Defendants' claim runs contrary to the well-reasoned opinion in Soghomonian v. The United States of America, 278 F. Supp. 2d 1151 (E.D. Cal. 2005) ("Soghomonian I"). In Soghomonian I, the court determined that, based on the facts of that case, even though "the credit report at issue...was [the husband's], it [was] clear from the evidence that it actually [fell] within the statutory definition of credit report as to both [husband] and [wife]." Soghomonian I, 278 F. Supp. 2d at 1167. Though that court later vacated its opinion pursuant to a stipulation between the parties, the court's logic was sound and is equally applicable here. See Soghomonian v. U.S., 2005 WL 1972594 (E.D. Cal.) ("Soghomonian II").

First, that Court looked to the FCRA, which defines a "consumer report" as follows:

> ...any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for...(A) credit...

15 U.S.C. § 1681a(d)(1) (emphasis added).

That court went on to note that the credit report at issue there, though belonging to the husband, had "considerable information pertaining to [his wife] as well." Soghomonian I, 278 F. Supp. 2d at 1167.

///

PDF created with pdfFactory trial version www.pdffactory.com

As an example, the court referred to a mortgage, a credit card, and an auto loan, which were reported on the husband's credit report as "joint accounts." Id. According to that court, the "notations constitute 'information [reported] by a consumer credit reporting agency bearing on a consumer's credit worthiness' which either was used or could reasonably have been expected to be used to 'serv[e] as a factor in establishing [the wife's] eligibility for ... credit.'" Id., quoting 15 U.S.C. § 1681a(a)(1).

In this case, as in Soghomonian I, Mr. Roybal's credit report lists at least one "joint account" on Mr. Roybal's credit report, a mortgage, that similarly constitutes "information reported by a consumer credit reporting agency bearing on a consumer's credit worthiness" as to Mrs. Roybal.[5]

Because the FCRA is to be liberally construed and because that information "was used or could reasonably have been expected to be used to 'serv[e] as a factor in establishing [Mrs. Roybal's] eligibility for ... credit,'" Defendants' argument is rejected. This Court finds that Mrs. Roybal has standing to raise FCRA claims based on the inaccuracies in Mr. Roybal's credit report.

**C. There are Genuine Issues of Material Fact as to Whether Plaintiffs Provided Notice of the Inaccuracies on Mr. Roybal's credit report to Defendants in 2004.**

The parties hotly contest whether Plaintiffs provided Defendants with proper notice of the inaccuracies on Mr. Roybal's credit report as required by the FCRA.

[5] The parties do not dispute that this mortgage belonged to both Mr. Roybal and Mrs. Roybal.

PDF created with pdfFactory trial version www.pdffactory.com

As this Court noted in its prior Order granting Defendants' Motion to Dismiss, "Liability for failing to accurately report a consumer's credit history is predicated on the consumer's obligation to report any alleged inaccuracy to the CRA directly." Order, 4:20-22 (April 4, 2006).

Defendants argue that the first contact Plaintiffs made with them that could be cast as "notice" of a dispute occurred in May of 2005. However, Defendants' argument ignores Mrs. Roybal's deposition testimony in which she stated that, in January and August of 2004, she made phone calls to Defendants to dispute the inaccurate items. Defendants challenge whether the calls were made, and whether, if made, the calls would have been sufficent to constitute notice under the FCRA.[6] These are genuine issues of material fact and are not conducive to resolution on this Motion.

**D. There are Genuine Issues of Material Fact as to Whether Defendants Reasonably Responded to Plaintiffs' Alleged Notices Regarding the Inaccurate Information Reported.**

Defendants next defend against Plaintiffs' FCRA claim by arguing that they acted reasonably in response to Plaintiffs' alleged notices.

[6] Defendants also dispute whether Mrs. Roybal was permitted under the FCRA to dispute Mr. Roybal's credit report on his behalf since the applicable statute requires the consumer to report to the CRA "directly" and since Defendants' employees allegedly advised Mrs. Roybal that Mr. Roybal had to dispute the reports personally. However, Mrs. Roybal alleges that Mr. Roybal spoke directly with Defendants to authorize them to speak with her regarding his file. The Court will not interpret the word "directly" to preclude notice via this contact. Any statements to the contrary made by Defendants' employees are irrelevant, and Defendants' elementary interpretation is rejected.

PDF created with pdfFactory trial version www.pdffactory.com

See Thomas, 197 F. Supp. 2d at 1237 (analogizing to the reasonableness analysis applicable to § 1681e violations). Reasonableness is typically a question of fact that should be left to the jury. See Id.; See also Guimond, 45 F.3d at 1333 (analyzing reasonableness in the context of § 1681e).

Even if reasonableness was conducive to resolution on summary judgment, which it is not here, Defendants have not shown that they did, indeed, act reasonably. Rather, Defendants put forth conclusory arguments based entirely on their assumption that the telephone calls in 2004 were not made or did not constitute "notice." Since Defendants have largely ignored Plaintiffs' claims that they made the requisite dispute as early as January of 2004, Defendants did not present any evidence as to the reasonableness of their actions between the time of that alleged notice and the initiation of this lawsuit.

There are genuine issues of material fact relevant to Defendants' reasonableness that cannot be decided on the current motion.

**E. There are Genuine Issues of Material Fact as to Whether Plaintiffs Suffered Actual Damages Due to Defendants' Alleged Violations of the FCRA and as to Whether Plaintiffs are Entitled to Statutory or Punitive Damages Based on Defendants' Allegedly Willful Conduct.**

There are two ways in which Plaintiffs can recover damages for a violation of § 1681i. Plaintiffs can recover actual damages for negligent noncompliance under § 1681o or statutory and punitive damages for willful noncompliance under § 1681n.

///

PDF created with pdfFactory trial version www.pdffactory.com

Defendants claim that Plaintiffs are unable to prove actual damages because their alleged injuries were not caused by Defendants' inaccurate reporting, but rather by other accurate derogatory items that were also reported. However, a reasonable trier of fact could infer that Plaintiffs' injuries, including an inability to obtain financing, resulted from the numerous inaccurately reported items. Defendants' argument necessarily fails.

Additionally, Defendants argue that Plaintiffs cannot show Defendants' behavior was "willful" as required to recover statutory or punitive damages. The word "willful" in this context includes conduct that shows a "reckless disregard of a statutory duty." Safeco Ins. Co. of America v. Burr, 127 S. Ct. 2201, 2208 (2007).

Defendants' argument here again ignores the possibility that Plaintiffs provided them with notice of their dispute as early as January of 2004. A reasonable trier of fact could find that Defendants' alleged failure to respond to Plaintiffs' phone calls over almost one and one-half years constituted action taken in "reckless disregard of that statutory duty."

There are genuine issues of material fact as to whether Plaintiffs suffered damages caused by Defendants' alleged FCRA violations.

///

///

///

///

///

///

PDF created with pdfFactory trial version www.pdffactory.com

**F. Conclusion**

Because this Court finds that Mrs. Roybal has standing to bring her FCRA claim and because there are genuine issues of material fact as to the disputed elements of Plaintiffs' claim, Defendants' Motions for Summary Adjudication as to Plaintiffs' seventh cause of action are denied.

## II. DEFENDANTS' MOTIONS FOR SUMMARY ADJUDICATION AS TO PLAINTIFFS' STATE CLAIMS ARE GRANTED IN PART AND DENIED IN PART.

### A. Plaintiffs' State Law Causes of Action are not Barred by the Limitation of Liability Provisions of FCRA § 1681h(e).

Defendants argue that Plaintiffs' State Claims are preempted pursuant to FCRA § 1681h(e). This Court addressed and disposed of this exact argument in its April 4, 2006, Order granting in part and denying in part Defendants' Motion to Dismiss. Order, 8:12-10:4 (April 4, 2006). There the Court stated:

> Resolution of this issue begins with a plain reading of the text of the FCRA. Specifically, Section 1681t deals with preemption of state laws and provides as follows:
>
> > "No requirement or prohibition may be imposed under the laws of any State (1) with respect to any subject matter regulated under section 611 [§ 1681i], relating to the time by which a consumer reporting agency must take any action, including the provision of notification to a consumer or other person, in any procedure related to the disputed accuracy of information in a consumer's file, except that this subparagraph shall not apply to any State law in effect on the date of enactment of the Consumer Credit Reporting Reform Act of 1996. [enacted September 30, 1996]"

PDF created with pdfFactory trial version www.pdffactory.com

15 U.S.C. § 1681t(b)(1)(B). The foregoing clarifies that state laws which impose requirements or prohibitions relating to the procedure of resolving disputed credit entries in effect on September 30, 1996, are not preempted.

The CRA Defendants contend, however, that Section 1681h(e) is a more specific provision that expressly precludes common law causes of action for defamation, invasion of privacy and negligence. In fact, Section 1681(h)(e) provides as follows:

> Except as provided in sections 616 and 617 [§§ 1681n and 1681o] of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 609, 610, or 615 [§§ 1681g, 1681h, or 1681m] of this title or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report, except as to false information furnished with malice or willful intent to injure such consumer.

See Id. at 1681h(e)(emphasis added). A fastidious reading of this section reveals that it applies only to causes of action based on information disclosed to consumers [15 U.S.C. § 1681g], the conditions and forms of disclosures to consumers [15 U.S.C. § 1681h] and requirements on users of consumer reports [15 U.S.C. § 1681m]. As was aptly explained in Whitesides v. Equifax Credit Info. Servs., Section 1681h(e) is not actually a preemption provision. Rather, it is a grant of protection for disclosures mandated under Section 1681g, 1681h and 1681m. See Whitesides v. Equifax Credit Info. Servs., 125 F. Supp. 2d 807, 811 (D. La. 2000). The disclosures contemplated by 1681h(e) are not at issue in this case. Particularly, Plaintiffs do not contend that the CRA Defendants improperly disclosed information to them or improperly used Plaintiffs' credit report. Rather, Plaintiffs here complain that the CRA Defendants failed to accurately maintain Plaintiffs' credit information as required by Sections 1681e and 1681i. Consequently, the Court finds that Section 1681(h)(e) does not preempt Plaintiffs' State Claims.

///

///

PDF created with pdfFactory trial version www.pdffactory.com

The Court finds that the above analysis is still applicable and Plaintiffs' state law claims are still not preempted by the FCRA.

**B. Plaintiffs' State Causes of Action are Not Barred by the "Mutual Interest" Privilege of California Civil Code § 47(c).**

Defendants next argue that each of Plaintiffs' state claims is barred by California Civil Code § 47(c), which provides a privilege for publications made "without malice, to a person interested therein...[by one] who is requested by the person interested to give the information."

Defendants bear the burden of showing that their publications are subject to California's statutory privilege and, if successful, Plaintiffs then bear the burden of proving that those publications were made with malice. Lundquist v. Reusser, 7 Cal. 4th 1193, 1208 (1994). Malice is defined as, "a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person." Batdorf v. Trans Union, 2000 WL 635455, *4 (N.D. Cal.), quoting Lundquist, 7 Cal. 4th at 1204. While mere negligence does not rise to the level of "malice" under § 47(c), "[t]here can be little question that the privilege is lost if defendant published...with knowledge of...falsity." Roemer v. Retail Credit Co., 3 Cal. App. 3d 368, 371 (1st Dist. 1970).

///

///

///

///

PDF created with pdfFactory trial version www.pdffactory.com

Defendants do not dispute that inaccuracies appeared on Mr. Roybal's credit report during 2004, nor do they dispute that copies of Mr. Roybal's credit report were provided to lenders in 2004. Defendants instead argue that they are entitled to protection under § 47(c) because Plaintiffs have not shown that Defendants acted with "malice."

However, since Plaintiffs claim to have provided notice of the inaccuracies in Mr. Roybal's credit file to Defendants on multiple occasions beginning in 2004, Plaintiffs have sufficiently shown, for purposes of the current Motions, that Defendants had knowledge of the falsity of the information contained in Mr. Roybal's credit report.

In response, Defendants rely on a statement from Batdorf where that court reasoned, "The fact that Trans Union deleted the disputed information within a month of receiving plaintiff's complaint suggests there was no malice." Trans Union's Motion, 23:7-8, quoting Batdorf at *4. Defendants' attempt to analogize to Batdorf fails because, once again, it ignores Plaintiffs' claims that, beginning in January of 2004, Plaintiffs contacted Defendants regarding the falsity of the entries in Mr. Roybal's report. While Defendants may have deleted the inaccurate items promptly after the filing of the current action, Defendants' Motion wholly fails to address the at least one and one-half year period between Mrs. Roybal's first alleged phone call and the removal of the entries.

Because a rational trier of fact could find that Defendants acted with malice if they provided the inaccurate information after being notified of its falsity, Defendants' argument is rejected. Plaintiffs' state claims are not barred by § 47(c).

PDF created with pdfFactory trial version www.pdffactory.com

### **C. Defendants' Motions for Summary Adjudication as to Plaintiffs' State Claims are Granted in Part and Denied in Part.**

#### **1. Unfair Business Practices, Cal. Bus. and Prof. Code §§ 17200 et seq. (First Cause of Action)**

Defendants argue that Plaintiffs' Unfair Competition Law ("UCL") claim is duplicative of other claims and should be dismissed because "plaintiff cannot use UCL to plead 'what is in substance an identical grievance arising from identical conduct' supporting a separate cause of action." Trans Union's Motion, 24:8-9, quoting Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 182 (1999).[7]

Defendants' argument fails because their cited authority is not on point. The court in Cal-Tech addressed the issue of whether a plaintiff could circumvent an absolute bar to a cause action by raising it under the auspices of a UCL claim. See id. at 182-184. That court determined, "[T]he unfair competition law does not permit an action that another statute expressly precludes. ...[A] plaintiff may not bring an action under the unfair competition law if some other provision bars it. That other provision must actually bar it, however, and not merely fail to allow it. In other words, courts may not use the unfair competition law to condemn actions the Legislature permits." Id. at 184.

---

[7] Defendants also argue that Plaintiffs' UCL claim, among others, must fail because it is dependent on the existence of Plaintiffs' FCRA claim. This argument is based wholly on Defendants' anticipation that this Court would dismiss Plaintiffs' FCRA cause of action. Since the Court denied Defendants' Motion as to that claim, their argument is moot. To the extent Defendants raise the same argument elsewhere, those arguments are similarly rejected.

PDF created with pdfFactory trial version www.pdffactory.com

In this case, Defendants' argument is flawed because they do not assert that Plaintiffs have attempted to raise any causes of action so barred. Defendants' Motions for Summary Adjudication as to Plaintiffs' first cause of action are denied.

**2. Consumer Legal Remedies Act, Cal. Civil Code § 1750 et. seq.(Second Cause of Action)**

Plaintiffs allege that Defendants violated several sections of the Consumer Legal Remedies Act ("CLRA"), which provides various protections to consumers of goods and services. Cal. Civ. Code § 1750 et seq. Defendants respond by claiming that the CLRA is not applicable to them because they have not undertaken a "transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Defendants also allege that Plaintiffs failed to adhere to the strict pre-lawsuit notice requirements of California Civil Code § 1782. Because the Court agrees with Defendants' latter argument, Defendants' Motions are granted as to Plaintiffs' second cause of action.

The CLRA requires that a plaintiff provide a defendant with notice of particular alleged violations of § 1770 prior to commencement of a lawsuit. Cal. Civ. Code § 1782. Section 1782 specifically states:

///

///

///

///

///

PDF created with pdfFactory trial version www.pdffactory.com

> (a) Thirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall do the following:
> (1) Notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770.
> (2) Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770.
> The notice shall be in writing and shall be sent by certified or registered mail, return receipt requested, to the place where the transaction occurred or to the person's principal place of business within California.

Cal. Civ. Code § 1782(a).

The only pre-lawsuit correspondence that could qualify as notice under the CLRA is the March 21, 2005, letter Plaintiffs' counsel alleges he sent to Defendants.[8] However, that letter did not provide the particularized notice required by Section 1782.

The purpose of the notice requirement is "to give the manufacturer or vendor sufficient notice of alleged defects to permit appropriate corrections or replacements." Stickrath v. Globalstar, Inc., 527 F. Supp. 2d 992, 1001-1002 (N.D. Cal. 2007), quoting Outboard Marine Corp. v. Super. Ct., 52 Cal. App. 3d, 30, 40 (1975). The statutory provision is meant to "facilitate pre-complaint settlements of consumer actions wherever possible." Von Grabe v. Sprint PCS, 312 F. Supp. 2d 1285, 1303-1304 (S.D. Cal. 2003), quoting Outboard Marine at 40-41. "[S]trict application of the [notice] requirement [is] necessary to achieve this goal." Von Grabe at 1304.

///

---

[8] The Court realizes that Trans Union disputes whether this correspondence was sent. However, assuming, *arguendo*, that it was, as discussed below, the letter was insufficient to constitute notice under the CLRA.

PDF created with pdfFactory trial version www.pdffactory.com

In light of those policies, the court in Von Grabe determined that the plaintiffs' correspondence failed to provide notice of particular violations of § 1770, nor did it mention any "specific violations thereof." The letter produced by Plaintiffs in this case differs from that in Von Grabe because the current document actually purported to be a notice issued pursuant to § 1782, mentioned § 1770, and alleged that several of its subsections had been violated. However, Plaintiffs' letter wholly failed to point to any particular violations of § 1770 capable of putting Defendants on notice of Plaintiffs' claims.

Specifically, Plaintiffs' letter stated:

> My clients have almost 100 derogatory credit entries on their credit reports, which are completely false and inaccurate, many of them issuing from [Defendants]. After numerous phone calls wherein [Defendants] failed to take remedial action, my clients have decided filing a lawsuit may be the only way to remedy this situation. Further, the derogatory credit entries have been festering on my clients' credit reports for years..."

Bradley Decl., Exh. B. Plaintiffs' counsel referred to Plaintiffs only by name and provided no additional identifying information. Even assuming that the names would be sufficient to provide notice to Defendants of Plaintiffs' identities, the letter made no mention of any specific disputed entries such that Defendants could have made "appropriate corrections," nor did the letter make particularized allegations regarding Defendants' conduct that allegedly resulted in violations of § 1770.[9]

///

---

[9] Plaintiffs do not dispute that they had numerous accurate derogatory items in their files, so Plaintiffs' vague correspondence would not have put Defendants on notice of which entries were inaccurate.

PDF created with pdfFactory trial version www.pdffactory.com

Additionally, the statements made in the purported notice in this case fall short of those approved of by the court in Stickrath. The plaintiffs in that case sent a letter to the defendant that "explicitly alleged two violations of the CLRA: that '[Defendant] represented through its advertising and other express representations that its Service had characteristics or uses which they do not have (Cal. Civ. Code § 1770(a)(5)) and that '[Defendant] falsely represented that its Service is of a particular standard, quality or grade when they were in fact of another (Cal. Civ. Code § 1770(a)(7)).'" Stickrath at 1002.

"The letter further explained that 'Plaintiffs allege that [Defendant] has fraudulently concealed or intentionally failed to disclose the nature and quality of the Service it provided from March 2003 to the present. More specifically, the Service has not performed according to the representations made by [Defendant] with respect to its coverage and reliability. Rather, the Service has been exceedingly unreliable. Plaintiffs and the proposed Class members' calls cannot be connected, have repeatedly been dropped, and when connected suffer from poor voice quality.'" Id.

In comparison, the conclusory allegations in the letter currently at issue, which stated that Plaintiffs intended to file unarticulated claims under various subsections of § 1770, do not come close to approaching the particularized allegations made in Strickland.

Because Plaintiffs failed to strictly adhere to the requirements of § 1782 by providing notice of "particular alleged violations of Section 1770" to Defendants, Defendants' Motions as to Plaintiffs' second cause of action are granted.

PDF created with pdfFactory trial version www.pdffactory.com

**3. Negligent Misrepresentation (Third Cause of Action)**

"Negligent misrepresentation is a form of deceit." Fox v. Pollack, 181 Cal. App. 3d 954, 962 (1st Dist. 1986). "The elements of fraud, which gives rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage. The tort of negligent misrepresentation does not require scienter or intent to defraud." Small v. Fritz Cos., Inc., 30 Cal. 4th 167, 173 (2003) (internal citations and quotations omitted).

Defendants make the conclusory argument that Plaintiffs' negligent misrepresentation claim must fail because Plaintiffs are unable to provide any evidence supporting any of the elements of the claim. Defendants go on to assert that this cause of action must fail as to Mrs. Roybal because she cannot show that Defendants made any representations to her regarding the Rickenbacker accounts and because the disputed accounts were not included in her credit file.

However, Defendants' argument again ignores Mrs. Roybal's deposition statement that, as early as January of 2004, she called Defendants on her own behalf and as authorized by Mr. Roybal to dispute the items listed on Mr. Roybal's report. She alleges that she was told there were too many items to be processed through the Defendants and that she needed to contact Rickenbacker directly.

///

///

PDF created with pdfFactory trial version www.pdffactory.com

She further alleges that Plaintiffs did contact Rickenbacker, taking a day off of work to travel to Rickenbacker's Gilroy office to dispute the entries in person. Therefore, this Court finds that Mrs. Roybal has provided evidence to support each element of her negligent misrepresentation claim.[10] Defendants' Motions for Summary Judgment as to Plaintiffs' third cause of action are denied.

**4. Negligence (Fourth Cause of Action)**

"The elements of a cause of action for negligence are well established. They are (a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach is the proximate or legal cause of the resulting injury." Ladd v. County of San Mateo, 12 Cal. 4th 913, 917 (1996) (internal citations, quotations, and emphasis omitted).

Defendants argue that this claim is dependent on the existence of Plaintiffs' FCRA claim. As previously stated their argument is now moot. Defendants Motions for Summary Adjudication as to Plaintiffs' fourth cause of action are denied.

///

///

///

///

///

[10] Because Mrs. Roybal claims to have spoken to Defendants on Mr. Roybal's behalf, this argument is equally applicable to his claims.

PDF created with pdfFactory trial version www.pdffactory.com

**5. Negligent and/or Intentional Interference with Contractual Relations; Tortious Interference with Prospective Economic Advantage (Fifth Cause of Action)**

Defendants challenge Plaintiffs' fifth cause of action arguing that California does not recognize the claim of negligent interference with contractual relations and that Plaintiffs failed to provide any evidence of Defendants' intentional interference with any contracts. However, the Court also interprets Plaintiffs' FAC as raising a claim for Tortious Interference with Prospective Economic Advantage, so the Court will address that cause of action as well. FAC, § 50 ("At the time of Defendants' conduct and acts described herein plaintiffs were in contractual relations with various creditors, or had prospective economic benefits reasonably expected from various creditors including mortgage lenders.").

First, the Court agrees with Defendants that California does not recognize a cause of action for Negligent Interference with Contractual Relations. See Fifield Manor v. Finston, 54 Cal. 2d 632, 636 (1960) ("The courts have quite consistently refused to recognize a cause of action based on negligent, as opposed to intentional, conduct which interferes with the performance of a contract between third parties or renders its performance more expensive or burdensome."). Therefore, Defendants' Motion for Summary Adjudication as to Plaintiffs' Negligent Interference with Contractual Relations cause of action is granted.

However, "[i]t has long been held that a stranger to a contract may be liable in tort for intentionally interfering with the performance of the contract.

///

PDF created with pdfFactory trial version www.pdffactory.com

The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." Pac. Gas & Elec. Co. V. Bear Stearns & Co., 50 Cal. 3d 1118, 1126 (1990) (internal citations omitted).

Plaintiffs Intentional Interference with Contractual Relations cause of action necessarily fails because Plaintiffs have failed to provide any evidence that they had entered into any actual third-party contracts that may have been affected by Defendants' allegedly unlawful actions. Therefore, Defendants' Motions as to Plaintiffs' Intentional Interference with Contractual Relations cause of action are granted.

Nevertheless, "[t]he tort of interference with prospective economic advantage protects the same interest in stable economic relationships as does the tort of interference with contract, though interference with prospective advantage does not require proof of a legally binding contract. The chief practical distinction between interference with contract and interference with prospective economic advantage is that a broader range of privilege to interfere is recognized when the relationship or economic advantage interfered with is only prospective." Id. 50 Cal. 3d 1126. (internal citations omitted).

///

///

PDF created with pdfFactory trial version www.pdffactory.com

The elements of a tortious interference with prospective economic advantage[("TIPEA") claim are "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) [D]efendant[s'] knowledge of the relationship; (3) intentional, wrongful acts on the part of [D]efendant[s] designed to disrupt the relationship; (4) actual interference with or disruption of the relationship; and (5) economic harm to the [P]laintiff proximately caused by the acts of the [D]efendant[s]." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1153 (2003).

"This tort...'protects the expectation that the relationship eventually will yield the desired benefit, not necessarily the more speculative expectation that a potentially beneficial relationship will arise.'" Id. at 1164 (quoting Westside Ctr. Assoc. v. Safeway Stores 23, Inc., 42 Cal. App. 4th, 507, 524 (5th Dist. 1996). Furthermore, "an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable standard."[11] Id. at 1159. Finally, Plaintiffs need not prove actual intent on the part of Defendants, but must show that Defendants "knew that the interference was certain or substantially certain to occur as a result of [their] action[s]." Id. at 1154.

///

///

///

///

---

[11] Defendants' alleged FCRA violations would constitute the requisite "wrongful conduct" in this instance.

PDF created with pdfFactory trial version www.pdffactory.com

Despite the failure of Plaintiffs' contractual relations claims, this Court finds that Plaintiffs have provided sufficient evidence to support their TIPEA claim. First, Plaintiffs provided evidence showing that they were engaged in negotiations for financing with specific lenders, and it is undisputed that Plaintiffs were denied credit between the time of their first alleged call to Defendants and the time the inaccurate entries were removed from Mr. Roybal's report. Plaintiffs' alleged relationships with mortgage lenders go beyond the realm of "speculative" because Plaintiffs were able to identify specific entities with whom they were working.

Additionally, Mrs. Roybal testified that she first provided notice to Defendants of the inaccuracies on Mr. Roybal's credit report in early 2004. In Mid-2004, Mrs. Roybal allegedly contacted Defendants again regarding the same inaccuracies. It is unclear from her deposition regarding the latter phone call whether she notified Defendants that she was indeed attempting to obtain financing. However, interpreting all facts in the light most favorable to Plaintiffs, her testimony could be so construed. Therefore, a rational trier of fact could find that Defendants knew of Plaintiffs' relationship with at least one lender and "knew that the interference was certain or substantially certain to occur as a result" of their failure to investigate and remove the inaccurate items from Mr. Roybal's credit file.

///

///

///

///

PDF created with pdfFactory trial version www.pdffactory.com

Finally, whether Defendants actually interfered with Plaintiffs' prospective economic relationships and whether Plaintiffs suffered economic harm were discussed to some extent in the context of Plaintiffs' FCRA claim. Defendants again dispute whether, in light of the multiple accurately reported derogatory items on Plaintiffs' credit reports, the inaccurately reported items actually caused any of the harm Plaintiffs' allege. As previously stated, this question, as well as the question of the existence or extent of any economic harm suffered by Plaintiffs cannot be resolved on this Motion. Because there are genuine issues of material fact precluding resolution of this cause of action, Defendants' Motions are denied as to Plaintiffs' Tortious Interference with Prospective Economic Advantage Claim.[12]

///

///

///

///

///

///

///

[12] Defendant challenges this cause of action and a number of Plaintiffs' state claims because Plaintiffs did not seek leave to amend their Complaint with the additions. "Leave to amend shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "The refusal to grant leave without any apparent justifying reason is an abuse of discretion." Pierce v. Multnomah County, OR, 76 F.3d 1032, 1043 (9th Cir. 1996), citing Foman v. Davis, 371 U.S. 178, 182 (1962). "Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility." Id., quoting Cal. Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1472 (9th Cir. 1987). None of these circumstances being present here, this Court will allow Plaintiffs to amend their Complaint as they have.

PDF created with pdfFactory trial version www.pdffactory.com

**6. Intentional Infliction of Emotional Distress (Tenth Cause of Action)**

In order to recover on an Intentional Infliction of Emotional Distress cause of action, a plaintiff must show, "(1) extreme and outrageous conduct by the defendant, (2) with the intention of causing, or reckless disregard of the probability of causing, emotional distress, and (3) resulting distress. To be outrageous, the conduct must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." Garamendi v. Golden Eagle Ins. Co., 128 Cal. App. 4th 452, 480 (1st Dist. 2005) (internal quotations and citations omitted).

Plaintiffs allege in their FAC that "Defendants subjected Plaintiffs to unlawful, harassing, unfair, harmful and distressing credit." FAC, ¶ 78. Therefore, the Court interprets Plaintiffs to complain that Defendants' alleged failure to correct the inaccuracies on Mr. Roybal's credit report between Mrs. Roybal's first alleged phone call and the actual date the items were deleted constituted extreme and outrageous conduct. This Court disagrees. Even construing all facts in the light most favorable to Plaintiffs, Defendants' conduct fails to rise to the level of that considered "so extreme as to exceed the bounds of that usually tolerated in a civilized community." Defendants' Motions for Summary Adjudication as to Plaintiffs' Tenth Cause of Action are granted.

///

///

///

///

PDF created with pdfFactory trial version www.pdffactory.com

**7. Negligent Infliction of Emotional Distress (Eleventh Cause of Action)**

California does not recognize an independent cause of action for Negligent Infliction of Emotional Distress. The California Supreme Court "[has] repeatedly recognized that the negligent causing of emotional distress is not an independent tort, but the tort of negligence." Burgess v. Super. Court, 2 Cal. 4th 1064, 1072 (1992) (internal citations and quotations omitted) (emphasis in original). Because Plaintiffs have independently pled a Negligence cause of action, Defendants' Motions for Summary Adjudication as to Plaintiffs' eleventh cause of action are granted.

**8. Negligence Per Se (Twelfth Cause of Action)**

Similarly, Negligence Per Se is not an independent cause of action recognized in California. Rather, the term refers to the borrowing of a statute to establish either the duty or standard of care in a negligence cause of action. See Elsner v. Uveges, 34 Cal. 4th 915, 927 n.8 (2004). Therefore, because this cause of action is not recognized in California, and because Plaintiffs have independently pled a Negligence claim, Defendants' Motions for Summary Adjudication as to Plaintiffs' twelfth cause of action are granted.

///

///

///

///

PDF created with pdfFactory trial version www.pdffactory.com

**9. Defamation (Thirteenth Cause of Action)**

Defendants argue that Plaintiffs' Defamation cause of action must fail because Plaintiffs cannot produce any evidence of "malice" as required to overcome the California Civil Code § 47(c) "mutual interest" privilege. The Court addressed this argument in detail above. For the reasons already discussed, Defendants' Motions for Summary Adjudication as to Plaintiffs' thirteenth cause of action are denied.

**10. Invasion of Privacy - False Light (Fourteenth Cause of Action)**

Defendants argue that Plaintiffs' False Light cause of action should be dismissed for the same reasons articulated in opposition to Plaintiffs' Defamation claim. For the same reasons stated above, those arguments fail here.

Additionally, Defendants argue that Plaintiffs' False Light claim is superfluous when pled in conjunction with Plaintiffs' Defamation claim. However, though Defendants assert that the False Light claim "stand[s] or fall[s] on whether it meets the same requirements as the defamation cause of action" Defendants cite to no authority <u>requiring</u> dismissal of either claim or forbidding Plaintiffs from raising both. Trans Union's Motion, 30;24-28, quoting <u>Eisenberg v. Alameda Newspapers, Inc.</u>, 74 Cal. App. 4th 1359, 1385 n.13 (1st Dist. 1999). Defendants Motions for Summary Adjudication as to Plaintiffs' fourteenth cause of action are denied.

///

PDF created with pdfFactory trial version www.pdffactory.com

**11. Punitive Damages**

Finally, Defendants challenge Plaintiffs' request for Punitive Damages under the Second, Fifth, Tenth, and Thirteenth causes of action.

The California Civil Code provides:

> (a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.
>
> ...
>
> (c) As used in this section, the following definitions shall apply:
>
> (1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.
>
> (2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.
>
> (3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

Cal. Civ. Code § 3294(a), (c).

Defendants argue that Plaintiffs cannot prove oppression, fraud, or malice by clear and convincing evidence. Again, Defendants completely ignore Mrs. Roybal's deposition testimony in which she claims to have first contacted Defendants in January of 2004.

///

///

///



PDF created with pdfFactory trial version www.pdffactory.com

As a result, Defendants ignore the possibility that a finder of fact could determine Defendants acted with malice or engaged in despicable conduct by failing to follow up on Plaintiffs' calls during the one and one-half year period that lapsed between those first contacts and the filing of this action. Defendants' Motions for Summary Adjudication as to Plaintiffs' request for punitive damages are denied.

**CONCLUSION**

Defendants Equifax and Trans Union's Motions for Summary Adjudication as to Plaintiffs first cause of action (UCL), third cause of action (Negligent Misrepresentation), fourth cause of action (Negligence), fifth cause of action (Tortious Interference with Prospective Economic Advantage), seventh cause of action (FCRA), thirteenth cause of action (Defamation), fourteenth cause of action (Invasion of Privacy - False Light), and claims for Punitive Damages are DENIED.

Defendants' Motions for Summary Adjudication as to Plaintiffs second cause of action (CLRA), fifth cause of action (Negligent and/or Intentional Interference with Contractual Relations), tenth cause of action (Intentional Infliction of Emotional Distress), eleventh cause of action (Negligent Infliction of Emotional Distress), and twelfth cause of action (Negligence Per Se) are GRANTED.

///

///

///

PDF created with pdfFactory trial version www.pdffactory.com

Additionally, Defendants' Motions to Strike and both Plaintiffs' Motion to Strike and request for sanctions are DENIED.

IT IS SO ORDERED.

DATED: October 9, 2008

MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

PDF created with pdfFactory trial version www.pdffactory.com